IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINGEERS, LOCAL 150, AFL-CIO,<br><br>    *Plaintiff,*<br><br>v.<br><br>RYAN & ASSOCIATES, INC., AN IOWA CORPORATION<br><br>    *Defendant.* | No. 18 C 8348<br><br>Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiff International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150" or "the Union") has brought suit to enforce three arbitration awards entered against Defendant Ryan & Associates, Inc., an Iowa Corporation ("Ryan"). Both Local 150 and Ryan have moved for summary judgment. (Dkts. 66, 69). Because it is undisputed that Ryan had notice of the arbitration and did not challenge the award within the 90-day time limit, Ryan has waived its challenges and Local 150's motion is granted. Ryan has also moved to strike the certifications of Declarants Henry Holladay, Justin Morhardt, and Troy McMeekan in their entireties under Fed. R. Civ. P. 37(c)(1). (Dkt. 82). This motion is denied for the reasons discussed below.

**BACKGROUND**

In motions for summary judgment, the Court "construes all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). Most, if not all, of the facts are in this case are heavily disputed, although the material facts are undisputed. The Court provides a brief outline of

the relevant facts and notes where the parties are in dispute. Defendant Ryan & Associates, Inc. is a corporation working in the construction industry and mainly employing plumbers and pipefitters. (Dkt. 71 ¶ 1). Plaintiff International Union of Operating Engineers, Local 150, AFL-CIO merged with Local 537 in around 1992 and both became Local 150 after the merger. (*Id.* ¶ 2). The Union has various districts but District 8, the district at issue in this case, is based out of Rock Island, Illinois and covers the Quad Cities area in Eastern Iowa and Western Illinois. (*Id.*).

### I. Description of the Collective Bargaining Agreements

Local 150 brought suit seeking to enforce three grievance awards. (Dkt. 33 at 1). At issue here are three collective bargaining agreements ("CBAs") that the parties dispute are enforceable. The first collective bargaining agreement at issue is known as the Building Construction Agreement between the Union and the Quad City Builders Association, which was effective May 1, 1970. (Dkt. 68 ¶ 7). Local 150 claims that this agreement rolled over year after year, but Ryan disputes this. (Dkt. 74 at 4). The Quad City Builders Association, Inc. was founded in the 1930's or 1940's and still exists today for the purpose of, among other things, negotiating the QCBA Building Agreement. (Dkt. 68 ¶ 8).

The next CBA at issue was signed on June 2, 1988, which was known as the Building Construction Agreement between the Union and the Quad City Builders Association. (Dkt. 68 ¶ 12). It was signed by Tim Hintze, then-President of Ryan effective May 1, 1988, through April 30, 1989, and renewed year after year thereafter until notice of modification or termination was served by either party in accordance with the terms of the agreement. (*Id.*). Ryan disputes that this document was for a CBA known as the QCBA Building Agreement. (Dkt. 74 at 6). Local 150 states that Ryan signed this version of the CBA as an individual signer; however, the signature page executed by Ryan & Associates deviates slightly from the signature page of the standard

individual signer page and eliminates the last few articles of the Association agreement. (Dkt. 68 ¶ 12). Ryan believes the deviation shows that the page is not part of the 1988 QCBA Agreement. (Dkt. 74 at 6).

On June 2, 2003, Tim Hintze signed the third CBA at issue. (Dkt. 68 ¶ 18). Local 150 states the agreement bound Ryan to the QCBA Building Agreement for the period of June 1, 2003, through May 31, 2006, even though the duration of the QCBA Building Agreement for that year was effective June 1, 2003, through May 31, 2004. (*Id.*). Tim Hintze admitted signing the signature page for this agreement and recalled that it was signed in order for Ryan & Associates to continue to make fringe benefit contributions. (*Id.*). Ryan does not dispute that Hintze signed three original copies of a one-page document titled "Duration and Termination," but disputes the remainder of the facts. (Dkt. 74 at 10). The circumstances surrounding the execution of this document were unusual because Local 150 and the Quad City Builders Association were in the midst of contentious negotiations and the current QCBA Building Agreement was about to expire; therefore, to avoid a potential strike, Ryan & Associates executed the document binding it to the QCBA Building Agreement before the final version was completed. (Dkt. 68 ¶ 19). Ryan does not dispute that when Ryan signed the document and that Local 150 and the QCBA were in the middle of contract negotiations at this time but disputes the remaining facts. (Dkt. 74 at 13).

## II. Local 150 and Ryan's Grievances

Each version of the QCBA Building Agreement contained a grievance and arbitration provision. (Dkt. 68 at ¶ 35). The following disputes are taken from Local 150's Rule 56.1 statement. At the outset, Ryan disputes the legitimacy of the grievance procedure because it maintains the facts show it was not bound by the QCBA. (Dkt. 74 at 32–46). On December 12, 2014, a dispute arose between Local 150 and Ryan under the terms of the QCBA Building

Agreement when Ryan used a non-bargaining unit employee to perform covered work and Local 150 attempted to resolve the dispute at a Step One conference but was unable to do so. (*Id.* at ¶ 37). On December 31, 2014, pursuant to Step Two of the procedure, Local 150 reduced the grievance against the Company to writing (filed as #14-8-004) and sought to set up a meeting whereby it could be resolved. (*Id.* at ¶ 38). The parties were unable to resolve the dispute at the Step Two proceeding; therefore, pursuant to Step Three of the contractual grievance procedure, Local 150 submitted the grievance against the Company to the Joint Grievance Committee (the "JGC") which was originally scheduled for March 27, 2015. (*Id.* at ¶ 39). On or about March 27, 2015, Local 150 and Ryan agreed to place the JGC Hearing on hold, while settlement discussions occurred. (*Id.* at ¶ 41).

On May 25, 2016, a dispute arose between Local 150 and Ryan & Associates under the terms of the QCBA Building Agreement when Ryan used a non-bargaining unit employee to perform work covered by the QCBA Building Agreement and Local 150 attempted to resolve the dispute at a Step One conference but was unable to do so. (*Id.* at ¶ 42). On July 19, 2016, Ryan stated that it was refusing to progress the grievances to the JGC and attempted to terminate the 2003 QCBA Building Agreement, and all other collective bargaining agreements between Ryan & Associates and Local 150. (*Id.* at ¶ 46).

On July 18, 2017, a dispute arose between Local 150 and Ryan when Ryan failed to bargain over a new or modified Agreement after attempting to terminate the QCBA Building Agreement, as required by the QCBA Building Agreement and Local 150 attempted to resolve the dispute at a Step One conference but was unable to do so. (*Id.* at ¶ 50). After Local 150 submitted the three grievances at issue to the JGC, Ryan took the position that because Ryan & Associates

claimed it successfully repudiated the QCBA Building Agreement it was not bound to the JCG procedure in the QCBA Building Agreement. (*Id.* at ¶ 53).

Because Ryan refused to schedule the three grievances for hearing, Local 150 scheduled the grievances for a hearing and gave notice to Ryan that a JGC would be convened on August 30, 2017, at Local 150's offices in Rock Island, Illinois. (*Id.* at ¶ 59). On August 30, 2017, the JGC conducted a hearing into the three grievances brought by Local 150 against the Company; however, representatives from Ryan all refused to attend the hearing despite receiving notice in advance of the hearing, therefore, the hearing convened with only three union representatives on the JCG: Marshall Douglas, Karl Drapeaux, and Patrick Carlson. (*Id.* at ¶ 60). Each of the three grievances at issue were presented to the JGC by Ryan Drew and at the conclusion of each presentation, Ryan Drew was excused from the hearing room and each matter was separately put to a vote where the Union prevailed 3-0 on each grievance. (*Id.* at ¶ 62). Ryan disputes the characterization that this was heard by the JGC as opposed to three Union representatives. (Dkt. 74 at 44). Based upon the evidence presented at the hearing, the JGC awarded Local 150 $2,840.64 in lost wages and benefits for grievance #14-8-004; $8,574.64 in lost wages and benefits for grievance #16-8-005, and ordered Ryan & Associates to negotiate to the end of reaching a new or modified agreement for grievance #17-8-005. (Dkt. 68 at ¶ 63).

By letter dated September 1, 2017, the JGC informed Ryan of its decisions and awards. (*Id.* at ¶ 64). However, Ryan has refused to comply with the JGC awards; therefore, Local 150 filed this action to enforce the Awards on December 20, 2018, pursuant to Section 301 of the Labor-Management Relations Act (LMRA) of 1947, 29 U.S.C. § 185. (*Id.* at ¶ 65).

## **LEGAL STANDARD**

The parties have filed cross-motions for summary judgment under Federal Rule of Civil Procedure 56(a), so the Court takes the motions "one at a time." *American Family Mut. Ins. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016). The general standards for summary judgment do not change with cross motions from summary judgment: with "cross summary judgment motions, we construe all facts and inferences therefrom in favor of the party against whom the motion under consideration is made." *Calumet River Fleeting, Inc. v. Int'l Union of Operating Engineers, Local 150, AFL-CIO*, 824 F.3d 645, 647–48 (7th Cir. 2016) (citations omitted). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g., Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). The parties genuinely dispute a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

## **DISCUSSION**

The facts about whether there was a binding CBA, either expressly or through years of conduct, are heavily disputed. However, whether there was a valid CBA is an issue the Court need not decide. The proper avenue for Ryan to raise its affirmative defenses as to the validity of the CBA or the award was in a motion to vacate. Although a joint committee is not a genuine arbitration panel, courts treat its awards as arbitration awards for most purposes. *William Charles Construction Co. LLC v. Teamsters Local Union 627*, 827 F.3d 672, 678 (7th Cir. 2016) (citing *Merryman Excavation, Inc. v. Int'l Union of Operating Eng'rs, Local 150*, 639 F.3d 286, 290 (7th Cir. 2011)). For actions challenging an arbitration award under § 301 of the LRMA, courts look

to the statute of limitations from a comparable action in the forum state. *Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 276 (7th Cir. 1989). The Illinois Arbitration Act provides a 90-day statute of limitations for challenging an arbitration award. 710 ILCS 5/12(b). The statute of limitations for challenging the arbitration award begins to run "after delivery of a copy of the award to the applicant [challenging the award]." 710 ILCS 5/12(b). A failure to challenge an arbitration award within this 90-day period renders the award nearly impervious to attack. *William Charles Construction Co. LLC*, 827 F.3d at 678 (citing *Int'l Union of Operating Eng'rs, Local 150, AFL–CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1311 (7th Cir. 1987)).

Where the relief sought is to nullify the arbitration award, the only avenue for such relief is a timely suit to vacate. *Centor Contractors, Inc.*, 831 F.2d at 1311. Here, Ryan has filed no such suit. It is undisputed that Ryan had notice of the JGC. (Dkt. 68 at ¶ 59). Yet Ryan representatives refused to attend the hearing despite receiving notice in advance of the hearing; therefore, the hearing convened with only three union representatives on the JCG. (*Id.* at ¶ 60). By letter dated September 1, 2017, the JGC informed Ryan of its decisions and awards. (*Id.* at ¶ 64). Ryan insists that it was not a party to the CBA, that the JGC was not properly comprised, and that the award is therefore improper, but such arguments should have been made before the panel or in a timely suit to vacate. *See Sullivan v. Gilchrist*, 87 F.3d 867, 871 (7th Cir. 1996) (Defendant argued that the CBA was not valid because he did not sign it and therefore the arbitration board never had jurisdiction over him, but Court held defendant waived his challenge since he did not move to vacate the award within the 90-day period despite being aware of it); *Plumbers Pension Fund, Local 130 v. Domas Mechanical Contractors, Inc.*, 778 F.2d 1266, 1268 (7th Cir.1985) ("a defendant's failure to move to vacate [an] arbitration award within the prescribed time period for

such a motion precludes it from seeking affirmative relief in a subsequent action to enforce the award.").

Ryan argues that its case is distinguishable from the long line of precedent holding that a timely suit to vacate is the primary means to challenge an award because this is a matter of subject matter jurisdiction and arbitrability, which are challenges that are not precluded. Ryan cites sparse authority to support its position. In *International Union of Operating Engineers v. Triad Construction Services, Inc.*, 1999 WL 759516, *2 (N.D. Ill. Sept. 1, 1999), an extreme outlier opinion, the Court allowed the challenge to proceed because it found the undisputed facts showed that the defendant did not sign the CBA. However, the only other district court to confront *Triad* found it unavailing. *See Illinois Dist. Council No. 1 of Intern. Union of Bricklayers and Allied Craftworkers v. Nagel*, 2005 WL 1651814, *2 (N.D. Ill. June 30, 2005) (finding that defendant's argument that there was no valid CBA and thus the award was unenforceable unpersuasive since defendant should have raised these claims within 90 days). Ryan also claims that *Sheet Metal Workers Local Union No. 20 v. Baylor Heating and Air Conditioning, Inc.*, 877 F.2d 547, 548 (7th Cir. 1989) supports its proposition that it may challenge the arbitrability at any time. Ryan acknowledges that *International Union of Operating Engineers, Local 150 v. Rabine*, 161 F.3d 427, 429 (7th Cir. 1998) abrogated this case, although Ryan claims it was on narrow grounds that would allow this Court to hear its challenges to the merits. This is untrue: *Rabine* squarely forecloses the reading of *Baylor Heating* Ryan desires and firmly precludes Ryan's wishes that the Court wade into its arguments as to the existence of a valid CBA, the composition of the JGC, and the enforceability of the awards.[1] Ryan rhetorically asks why would an employer think that it

---

[1] The only other case Ryan cites as support for its arguments in its briefing as to the waiver of its affirmative defenses is a Connecticut Court of Appeals case from 1986, which is neither persuasive nor binding authority.

might have to affirmatively file suit to vacate awards when it did not believe it to be bound by the CBA? The answer is clear: "[t]he rule is a simple one: If you receive notice of an adverse decision in a federal labor arbitration, challenge it within 90 days or expect to pay up. Just as there is a difference between a jurisdictional prerequisite and a merits prerequisite, there is a difference between a timely valid defense and an untimely one." *Rabine*, 161 F.3d at 434. Ryan's attempts at distinguishing clear precedent are unsuccessful. The fact of the matter is that Ryan had fair notice of the award and had it wanted to raise its affirmative challenges, it should have filed a motion to vacate by November 30, 2017. Since the undisputed facts show that Ryan had notice and did not challenge the awards, the Court cannot consider its other arguments as to the validity of the CBA.

### III. Ryan's Motion to Strike

Ryan has moved for a Motion to Strike Certifications. (Dkt. 82). Local 150 offered the certifications of two members of Local 150 and one individual working under a permit with the Union after the completion of all depositions but while Discovery was still open. (Dkt. 83 at 1). The Declarants are Henry Holladay, Justin Morhardt, and Troy McMeekan. (*Id.* at 2). Local 150 did not list these declarants in its initial disclosures or what Ryan refers to as "any timely supplements." (*Id.* at 1).

Both parties admit that they were exempt from initial disclosures under Fed. R. Civ. P. 26(a)(1)(B) ("The following proceedings are exempt from initial disclosure…(ix) an action to enforce an arbitration award."). The parties exchanged initial disclosures as a courtesy to each other, while acknowledging that Rule 26 did not apply to them. (Dkt. 90 at 8; Dkt. 91 at 3). Ryan states that since the parties exchanged initial disclosures, although not required to do so under the Rules, Rule 26 now applies to them. (Dkt. 91 at 3). Ryan does not have support for its statement,

and indeed the Court cannot find any. Simply because the parties engaged courteously with one another does not suddenly force a change of the meaning behind Rule 26 to apply to this action. Ryan's Motion to Strike Certification is denied on this ground.

Additionally, Ryan has failed to comply with Local Rule 37.2, which states that:

unless the motion includes a statement (1) that after consultation in person or by telephone and good faith attempts to resolve differences they are unable to reach an accord, or (2) counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's. Where the consultation occurred, this statement shall recite, in addition, the date, time and place of such conference, and the names of all parties participating therein. Where counsel was unsuccessful in engaging in such consultation, the statement shall recite the efforts made by counsel to engage in consultation

L.R. 37.2. Ryan, however, declares that its Motion to Strike Certifications is not a "discovery motion" and therefore Local Rule 37.2 does not apply. (Dkt. 91 at 2). Local Rule 37.2 clearly states that it applies to "Rules 26 through 37 of the Federal Rules of Civil Procedure," and Ryan admits its motion is a Rule 37(c)(1) motion. Other courts in this District have held that Local Rule 37.2 applies to Rule 37(c)(1) motions and have dismissed for failure to comply. *See e.g. Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 2017 WL 3922175, at *5 (N.D. Ill. Sept. 7, 2017) ("Rule 37(c)(1) motion must therefore be denied for failing to comply with Local Rule 37.2 alone")*; Jones v. Union Pac. R.R. Co.*, , 2015 WL 5252958, at *16 (N.D. Ill. Sept. 8, 2015) (Rule 37 motion was not properly before the court because it lacked the required Local Rule 37.2 certification). Ryan has provided no excuse as to its failure to properly confer with Local 150. Therefore, the Court denies the Motion to Strike on this ground as well.

## **CONCLUSION**

For the reason's discussed above, Local 150's Motion for Summary Judgment [Dkt. 66] is granted and Ryan's Motion for Summary Judgment [Dkt. 69] is denied. Ryan's Motion to Strike Plaintiff's Certifications is also denied. [Dkt. 82].

_____
Virginia M. Kendall
United States District Judge

Date: October 27, 2020